## BENT *v.* THOMPSON.

APPEAL  FROM  THE  SUPREME  COURT  OF  THE  TERRITORY  OF
NEW  MEXICO.

No. 1282. Submitted January 7, 1891. — Decided January 26, 1891.

Under the laws of the Territory of New Mexico, a judgment of a probate court, in 1867, admitting a will to probate, cannot be annulled by the same court, in a proceeding instituted by an heir more than twenty years

after the judgment was rendered and more than four years after the heir became of age.

Under the "laws of Velarde," which, under the provisions of the Kearny Code, remained in force in that Territory until modified by statute, the practice and procedure of the probate courts were matters of statutory regulation, the probate judge had jurisdiction to admit wills to probate by receiving the evidence of witnesses, and his judgment was valid, and, although reviewable on appeal, was conclusive unless appealed from and reversed.

THE case is stated in the opinion.

*Mr. E. T. Wells, Mr. K. T. McNeal, Mr. Caldwell Yeaman, Mr. Benjamin F. Butler* and *Mr. O. D. Barrett* for appellant.

*Mr. Frank Springer* for appellees.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

THIS is an appeal from a judgment of the Supreme Court of the Territory of New Mexico. The opinion of that court is reported as *Bent* v. *Thompson*, 23 Pac. Rep. 234. In connection therewith, that court made and filed a statement of facts in substance as follows:

Alfred Bent died on the 9th of December, 1865, leaving as his only heirs at law his widow, Guadalupe Bent, and three sons, namely, Charles Bent, William Bent, (the appellant,) also sometimes called Julian Bent, and Alberto Silas Bent. Charles Bent arrived at his majority on the 26th of April, 1881; William Bent on the 31st of May, 1883; and Alberto Silas Bent on the 20th of October, 1885. The widow was the mother of the above-named three children. She presented to the probate judge of Taos County, in the Territory of New Mexico, a last will and testament which she claimed to be, and which purported to be, the last will and testament of said Alfred Bent, executed December 6, 1865, the terms of which are not material. On the 6th of March, 1867, this will was proved, approved and ordered to be recorded, by the said probate judge, as the last will and testament of the said Alfred Bent, the record of the probate court on that day being in

these words, the judge of probate, the clerk, and a deputy sheriff being named as present: "The administrators of the estate of Alfred Bent, deceased, presented the will of said deceased for approval; the court examined said will and the witnesses in it mentioned, and finding it correct according to law approved it and ordered that it be recorded in this office." The said Guadalupe, has since intermarried with one George W. Thompson. No appeal or other proceedings in regard to the will or its probate were had, so far as the record discloses, until August 12, 1887, when the appellant filed his petition in the probate court of Taos County, for the re-probate of the will and the setting aside of the record of its former probate. At the time such petition was filed, more than twenty years had elapsed since the will was probated and recorded, and the petitioner had arrived at his majority more than four years prior to the filing of said petition, which was the commencement of this proceeding. The record does not disclose whether or not Charles Bent, William Bent and Alberto Silas Bent were summoned to be present at the time the will was probated in 1867, but does show that Guadalupe Bent, widow of the decedent and mother of the children, was a party to the proceeding.

Guadalupe Thompson, Alberto Silas Bent, Charles Bent, the Maxwell Land Grant Company and the Maxwell Land Grant and Railway Company appeared in the proceeding as respondents, and, on the 7th of September, 1887, the probate court made a decree declaring null and void the probate of March 6, 1867, and declaring further that the paper writing so proposed by said Guadalupe Thompson as the last will of Alfred Bent was not such last will, and ordering that it be rejected and the record thereof annulled.

Among the grounds of objection filed in the probate court by the Maxwell Land Grant Company, and the Maxwell Land Grant and Railway Company, to its action in reopening the matter of the probate, were the following, called "third" and "fourth:" "Because said petitioner has not made his application, if he had the right to do so, within a reasonable time after the former probate of said will. Because this court and

judge thereof has no right or authority to disprove the acts of his predecessor done in his official capacity more than twenty years since or at any other time, the record thereof having during all that time remained in full force and effect and other parties having acquired rights thereon on the faith of the same."

The two companies took an appeal to the District Court sitting within and for the county of Taos, from the judgment of the probate court, assigning, among other reasons of appeal, the following: "6th. Because neither the probate court nor the probate judge had jurisdiction to entertain the said petition or grant the prayers thereof. 7th. Because neither said probate court nor said probate judge could inquire into the validity of the acts of the probate court or probate judge done at a regular term of the probate court more than twenty years prior to the filing of said petition of William Bent." The District Court sustained the grounds of appeal above specified, and declared null and void, and vacated, set aside, and held for naught the proceedings of the probate court of September 7, 1887. From this judgment William Bent appealed to the Supreme Court of the Territory. That court affirmed the judgment of the District Court, and entered a judgment dismissing the petition, and declaring null and void, vacating, setting aside, and holding for naught the proceedings of the probate court of Taos County had in September, 1887. William Bent has appealed to this court.

In its opinion, the Supreme Court discusses the question of probating a will in common form and in solemn form, in view of the fact that the petitioner demanded a re-probate of the will in solemn form, and that the opposing parties contended that the probate of a will was a purely statutory proceeding in New Mexico, and that its laws did not recognize the double form of probating wills nor require notice to heirs or legatees. The complaint of the petition was, that neither the petitioner, nor Charles Bent, nor Alberto Silas Bent, had any notice of the intention to present the will for probate, and were not present or heard. The Supreme Court held that the civil law was in force in New Mexico, and it examined the provisions

thereof in regard to proving a will, and arrived at the conclu-
sion that any person interested could have a will probated,
without notice to the heirs or other interested parties, it being
required only that witnesses should be summoned, and only
one form of probate being prescribed; that, by the Kearny
Code of 1846, the prior "laws of Velarde," in relation to the
execution and proving of wills and the administration of the
estates of deceased persons, dating back to 1790, were con-
tinued in force; that, by section 17 of the act of January 12,
1852, (Laws of 1851–2, p. 356; Compiled Laws of New Mexico
of 1884, sec. 1393,) authority was given to probate judges, in
their respective counties, to "qualify" or probate wills, "by
receiving the evidence of the witnesses who were present at
the time of making the same, and all other acts in relation to
the investigation of the validity thereof;" that, by the act of
January 26, 1861, (Laws of 1860–1, p. 62; Compiled Laws,
secs. 1446–1449,) it was provided as follows: "No judge of
probate shall have the power to declare any will, codicil, or
any other testamentary disposition, to be null and void under
the pretext of the want of the solemnities prescribed by the
laws of this Territory by the testator making such disposition;"
that the second section of the same act provided, in substance,
that, when a will was presented for probate, if the probate
judge should doubt whether it ought to be approved or not,
he should return the will immediately to the person who pre-
sented it for probate, noting on the foot of it his reasons for
refusing approval; that the third section of the same act pro-
vided that it should be the duty of the person to whom the
will was returned to present the same at the next regular
term of the District Court of the county, whose duty it was
made to examine into the matter and declare by its decision
whether the will was valid or void, and then return it to the
party; and that there was a proviso to the fourth section of
the act, reading as follows: "That any proceedings had by
said judges of probate not in conformity with the provisions
of this act shall be declared null and of no effect by the
District Court, and all at the cost of the said probate judges."

The Supreme Court declares that such was the state of the

law of the Territory at the time the will was executed and
probated and at the time Alfred Bent died ; that, in *Browning*
v. *Browning,* 9 Pac. Rep. 677, it had held that the common
law was not introduced into the Territory by the organic act,
except in a very limited degree ; that even in 1876, when the
common law was formally adopted as the basis of the juris-
prudence of the Territory, it was the common law " as recog-
nized in the United States " that was adopted, that is, " the
common law, or *lex non scripta,* and such British statutes of
a general nature, not local to that kingdom, nor in conflict
with the Constitution or laws of the United States nor of this
Territory, which are applicable to our condition and circum-
stances, and which were in force at the time of our separation
from the mother country ; " that it was not intended, by the
adoption of the common law in 1876, to repeal the statute
laws of the Territory, but only such portions of the common
law were adopted as did not conflict with such statute laws;
that the statute laws governing probate courts and defining
the manner in which wills should be probated in the Territory
remained in force until modified by the act of 1889, and were
the basis of the jurisdiction and authority of the probate
courts; that the probate of a will in the manner prescribed by
the statute was conclusive, and must be recognized and ad-
mitted in all courts as valid, so long as such probate stands;
and that, as it appeared by the record that the will was pro-
bated as required by law, by the mother of the petitioner, who
was an interested party, more than twenty years prior to the
filing of his petition in the probate court, and that the peti-
tioner delayed filing his petition for more than four years
after he attained his majority, and as the record stated that
the probate court examined the will and the witnesses men-
tioned in it, and found it correct according to law, approved it
and ordered it to be recorded in the probate office, and as, by
the statute of New Mexico, (Compiled Laws of 1884, secs.
1869, 1881,) an infant was allowed one year after the removal
of his disabilities to assert his rights, except as to real estate,
in which case the period was extended to three years, the
petitioner had no rights in the premises and no standing in
court at the time he instituted the proceeding.

The only question presented for consideration is whether, under the laws of the Territory of New Mexico, a judgment of a probate court in that Territory admitting a will to probate can be annulled by the same court in a proceeding instituted by an heir more than twenty years after the original judgment was rendered and more than four years after the heir became of age.

The provisions of the laws of New Mexico applicable to proceedings such as those involved in the present case, which were in force at the date of the probate in 1867, were as follows, as contained in the Compiled Laws of 1884:

"§ 562. The several probate judges shall have exclusive original jurisdiction in all cases relative to the probate of last wills and testaments: The granting letters testamentary and of administration, and the repealing the same; . . . to hear and determine all controversies respecting wills, the right of executorship, administration, or guardianship; . . ." Kearny Code, 1846.

"§ 563. Appeals from the judgment of the probate court shall be allowed to the District Court in the same manner, and subject to the same restriction as in case of appeals from the District to the Supreme Court." Kearny Code, 1846.

"§ 1393. Probate judges, in their respective counties, are authorized to qualify wills, by receiving the evidence of the witnesses who were present at the time of making the same, and all other acts in relation to the investigation of the validity thereof." Act of January 12, 1852.

"§ 1365. The laws heretofore in force concerning descents, distributions, wills, and testaments, as contained in the treatises on these subjects written by Pedro Murillo de Lorde, [Velarde] shall remain in force so far as they are in conformity with the Constitution of the United States, and the statute laws in force for the time being." Kearny Code, 1846.

The following four sections were enacted January 26, 1861:

"§ 1446. No judge of probate shall have the power to declare any will, codicil, or any other testamentary disposition to be null and void under the pretext of the want of the solem-

nities prescribed by the laws of this Territory by the testator making such disposition.

"§ 1447. When any probate judge shall doubt whether any testamentary disposition as those mentioned in section 1446, ought to be approved on account of the want of any solemnity as aforesaid, in case that such should be the opinion of any judge of probate, he shall immediately return to the person who may have applied for the approval of such document, the testament, codicil, or any other testamentary disposition, which may have been placed in his hands for the approval thereof, noting at the foot of said document the positive reasons on which he founds his opinion for refusing his approval.

"§ 1448. It shall be the duty of any person to whom may have been returned a document, such as are mentioned in this act, to present the same to the District Court of their respective county at the first regular term of said court; and it shall be legal for said court to examine such documents, together with the observations submitted by the probate judge who may have refused his approval; and it shall be the duty of the said District Court, at the same term, to declare the validity or nullity of such documents, and to return the same, after making its decision, to the party interested.

"§ 1449. If, in the judgment of any probate judge of this Territory, any will, codicil, or any other testamentary disposition does not merit his approval, he shall return the same to the party interested, as required in section 1447; but in this case the probate judge shall grant letters of administration to the person or persons appointed as testamentary executor in said documents in preference to any other person who may also solicit them: *Provided,* That any proceedings had by said judges of probate not in conformity with the provisions of this act shall be declared null and of no effect by the District Court, and all at the cost of the said probate judges."

No further change in the probate laws was made until 1889.

In addition to the foregoing, may be mentioned the following, by which all laws in force in New Mexico touching wills, if any, additional to those contained in Velarde's treatise, were continued in force until supplanted by legislation:

" All laws heretofore in force in this Territory, which are not repugnant to, or inconsistent with, the Constitution of the United States, and the laws thereof, or the statute laws in force for the time being, shall be the rule of action and decision in this Territory." Kearny Code, 1846, Tit. Laws, sec. 1; found in Compiled Laws of 1884, p. 114.

This section was substantially reënacted by the act of July 14, 1851, and again in the Compiled Laws of 1865, p. 512 (Chaper LXXII, sec. 6), but was omitted by the compilers from the Compiled Laws of 1884, on the ground that in their opinion it was " obsolete and out of date." Compiled Laws, 1884, p. 1402, par. 72. The volume of 1884 is, however, only a compilation of existing law and neither reënacts nor repeals anything.

The common law was not adopted in New Mexico until 1876, when the following act was passed (Act of January 7, 1876, c. 2, § 2; Compiled Laws, § 1823) : " In all the courts of this Territory, the common law as recognized in the United States of America shall be the rule of practice and decision."

Upon this act the Supreme Court of New Mexico has held as follows : " We are therefore of opinion that the legislature intended, by the language used in that section, to adopt the common law, or *lex non scripta*, and such British statutes of a general nature, not local to that kingdom, or in conflict with the Constitution or laws of the United States, nor of this Territory, which are applicable to our condition and circumstances, and which were in force at the time of our separation from the mother country." *Browning* v. *Browning*, 9 Pac. Rep. 677, 684.

In regard to the argument made, that by the provision in the organic act of New Mexico, declaring that the jurisdiction of the Probate Courts should be " as limited by law " (Act of Sept. 9, 1850, § 10, 9 Stat. 449), the practice and procedure of the common law touching matters of probate came into force in New Mexico, regardless of any statutory provisions of the Territory, which view is sought to be supported by a reference to *Ferris* v. *Higley*, 20 Wall. 375, it may be said, that that case relates only to the jurisdiction and not to the practice of

those courts; and that, in *Hornbuckle* v. *Toombs*, 18 Wall. 648, 656, this court, speaking by Mr. Justice Bradley, said: "From a review of the entire past legislation of Congress on the subject under consideration, our conclusion is, that the practice, pleadings, and forms and modes of proceeding of the Territorial courts, as well as their respective jurisdictions, subject, as before said, to a few express or implied conditions in the organic act itself, were intended to be left to the legislative action of the Territorial assemblies, and to the regulations which might be adopted by the courts themselves. Of course, in case of any difficulties arising out of this state of things, Congress has it in its power at any time to establish such regulations on this, as well as on any other subject of legislation, as it shall deem expedient and proper."

From an examination of the provisions of the "laws of Velarde," which under the provisions of the Kearny Code, remained in force until modified by statute, we are of opinion that the practice and procedure of the Probate Courts were matters of statutory regulation; that the probate judge had jurisdiction to admit wills to probate by receiving the evidence of the witnesses; and that his judgment was valid and, although reviewable on appeal, was conclusive unless appealed from and reversed.

It is to be remarked that, in the findings of fact made by the Supreme Court of the Territory, it is not stated that William Bent was not present at the probate and was not cited to appear, but it is stated only that the record does not disclose whether or not he was summoned to be present.

Sections 1860, 1863, and 1869 of the Compiled Laws of New Mexico of 1884 are as follows:

"§ 1860. The following suits or actions may be brought within the time hereinafter limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially provided."

"§ 1863. Those founded upon accounts and unwritten contracts, those brought for injuries to property, or for the conversion of personal property, or for relief upon the ground of fraud, and all other actions not herein otherwise provided for and specified, within four years."

"§ 1869. The times limited for the bringing of actions herein shall, in favor of minors and persons insane or under any legal disability, be extended so that they shall have one year from and after the termination of such disability within which to commence said actions."

It was held by the Supreme Court of New Mexico, in *Browning* v. *Browning*, 9 Pac. Rep. 677, 684, 685, that the limitations of the statute of January 23, 1880, of New Mexico, of which those three sections are a part, applied to proceedings in the Probate Court. We think this construction was correct, and that the present suit is an action to annul a former judgment of the Probate Court. Such is the character of the judgment declaring the former probate to be null and void.

Moreover, by sections 1446–1449 of the Compiled Laws, before quoted, the course of procedure of the probate judge was distinctly defined, and he had no power to declare the will void. On the contrary, his proceeding, not being in conformity with the provisions of the act of January 26, 1861, was, as declared by that act, null and of no effect.

*Judgment affirmed.*